CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 0 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

TRACEY WHEELER,            )
                           )
     Plaintiff,         )
                           )
v.                          )
                           )
COMMONWEALTH OF VIRGINIA, et al., )
                           )
     Defendants.     )

Civil Action No. 7:17CV00337

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Senior United States District Judge

Tracey Wheeler filed this action against the Commonwealth of Virginia, the Virginia Department of Alcoholic Beverage Control, the Virginia Alcoholic Beverage Control Board (collectively, "ABC"), and David Chrisley. Wheeler asserts claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") against ABC, and related claims of assault and battery against Chrisley. The case is presently before the court on ABC's motion for summary judgment.[1] The court held a hearing on the motion via teleconference on January 23, 2019. The motion has been fully briefed and is now ripe for review. For the following reasons, the motion will be granted in part and denied in part.

### Background

The following facts are either undisputed or presented in the light most favorable to Wheeler. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (emphasizing that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor," when ruling on a motion for summary judgment).

On June 9, 2014, ABC hired Wheeler to work as a part-time sales associate. John Singleton Decl. ¶ 5, Dkt. No. 113-1. Wheeler was ultimately assigned to ABC Store No. 229 in

---

[1] Chrisley did not move for summary judgment on the claims against him.

Bonsack, Virginia. Wheeler Dep. 10, Dkt. No. 120-1. A few weeks after Wheeler began working at the Bonsack location, the store manager, Jennifer Stutts, broke her ankle. Stutts Dep. 12, Dkt. No. 120-3. While Stutts was on leave, other ABC employees, including David Chrisley, filled in for Stutts. Id. 12–13.

At the time of Wheeler's hiring, Chrisley worked as a "relief assistant manager." Singleton Decl. ¶ 6. In that supervisory position, Chrisley would oversee a particular store's operations while the manager or assistant manager was unavailable. Id. One of Chrisley's "core responsibilities" was "staffing management," which included assisting store managers with "maintaining a properly staffed operation of wage employees" and "recruiting, screening applications and interviewing" job applicants. Employee Work Profile 5, Dkt. No. 120-20; see also id. 1 (listing Chrisley's position level as "supervisor").

Wheeler and Chrisley worked together for the first time at the Bonsack store in July of 2014. Wheeler claims that Chrisley was "extremely flirtatious" from the start of their shift. Wheeler Dep. 124. For instance, Chrisley commented on Wheeler's attractiveness and told her that she "would probably never be interested in someone like him." Id. 214. Chrisley also recommended that customers use Wheeler's checkout line because she was "better looking." Id. After they discussed the fact that standing still can lead to back pain, Chrisley advised Wheeler that he was an "expert masseuse." Id. 38.

Chrisley proceeded to make lewd sexual remarks and advances toward Wheeler. Prior to the end of their shift, Chrisley told Wheeler that he "knew Kama Sutra" and "went on and on about the best sex positions."[2] Id. 122, 124. After closing the store, Chrisley and Wheeler entered a back room, where they were responsible for clocking out on a computer. When Wheeler turned around after clocking out, Chrisley was standing right behind her. Id. 37. He

---

[2] "The Kama Sutra of Vatsyayana [is a] widely distributed book candidly describing a large number of sexual positions." United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 367 (1971).

patted a nearby desk and directed Wheeler to sit down. Id. Chrisley then began to massage and pull on Wheeler's fingers. Id. 41–42. While doing so, Chrisley's face was "red and sweaty," and he was "breathing very hard" and moaning. Id. 197–98. In response, Wheeler abruptly stood up and pulled her hand from Chrisley's grasp. Id. 44, 198–99. Because Chrisley was blocking her path and appeared unwilling to let her to leave, Wheeler had to physically "push past him" in order to exit the room. Id. 44, 129, 199. She then retrieved her purse and waited by the front door of the store until the alarm system was disabled. As soon as she was able to exit the store, Wheeler went straight to her vehicle. Id. 45. By that point, Wheeler felt "very panicky" and had "vomit in [her] mouth." Id. 46.

At that time, and at all times relevant to this case, ABC had a "zero tolerance" workplace harassment policy. Patrick Campbell Dep. 37, Dkt. No. 120-2; Faith Richardson Dep. 40, Dkt. No. 120-13. The written policy listed "several options" for reporting harassment, including speaking to any supervisor:

> 1. An employee may choose to report allegations of workplace harassment to any agency, manager, supervisor, or Division Director that they feel comfortable reporting to.
>
> 2. An employee may also choose to report directly to the Director of Human Resources or the Employee Relations Manager.

Harassment Policy 1, Dkt. No. 113-1. The policy further provided that "[m]anagers or supervisors receiving complaints of workplace harassment have a duty to report allegations" and that they "must notify their Division Director within 24 hours or by close of business the next day." Id. at 1–2.

Wheeler's evidence indicates that she reported Chrisley's offending conduct to several individuals in supervisory roles, including Stutts, the store manager. Stutts Dep. 13. Wheeler advised Stutts about the incident that occurred in the back room of the store and emphasized that she would not feel comfortable working with Chrisley again:

> [I told Stutts that Chrisley] was very flirtatious, that he came on to me, that he was very close to me in speaking, that I didn't have any space. I told her that I was uncomfortable about working with him. I told her that when we closed and we were finishing, that he had told me my money was short and that he had me sit on the desk.
>
> I told her that he patted the desk for me to sit down there on the spot, that he began to try to massage my hands. I told her he was very sweaty. He seemed to be making a noise and I had to push past him, and I never wanted to work with him again.

Wheeler Dep. 26–27.

It is undisputed that Stutts did not report Wheeler's allegations of workplace harassment to her Division Director, the Director of Human Resources, or the Employee Relations Manager, as required by the harassment policy. Instead, Stutts "simply made sure [Wheeler and Chrisley] did not work together" at the Bonsack location. Stutts Dep. 15. As a result, no disciplinary action was taken against Chrisley at that time.

Wheeler did not work with Chrisley again for approximately two years and she "was okay with that." Wheeler Dep. 82. However, the plaintiff's evidence indicates that Chrisley also engaged in inappropriate conduct with other women. See, e.g., Gail Dollman Dep. 16–17, Dkt No. 120-6 ("I have seen customers complain. I have seen customers leave the store because of [Chrisley's] . . . aggressive flirting."); see also id. at 21 (describing an occasion on which the deponent observed Chrisley giving another female employee a massage while the employee was lying on a table in the back room). The "consensus" among managers was that none of them wanted Chrisley working in their stores. Stutts Dep. 10–11.

On April 8 and 9, 2016, Wheeler and Chrisley were scheduled to work together at the Bonsack store. Wheeler Dep. 101. Wheeler learned ahead of time from another employee that she and Chrisley would be working together. Although Wheeler "wanted to just call in and miss pay," she ultimately decided to report for work since other employees would be present. Id.

On the first day that they were assigned to work together, Wheeler's efforts to ignore Chrisley and avoid having any contact with him proved unsuccessful. Chrisley approached Wheeler "right off the bat" and began humming "the Let's Talk About Sex song." Id. 101–02. He then poked Wheeler in her sides and back while she was unloading cases of liquor, and "pull[ed] his goatee down and lick[ed] his lips" when she walked by him. Id. 102, 202. Chrisley also cornered Wheeler in the store several times and said, "[O]oh la, Ms. Wheeler, come with me, ooh la la." Id. 102, 215.

At some point the next day, Chrisley told Wheeler that he "could write [her] up right now." Id. 208. When Wheeler asked why, Chrisley said that she was "showing too much cleavage" but he was "enjoy[ing] it." Id. 209. In response, Wheeler placed one of the sweaters she was wearing around her shoulders like a shawl. Id. Chrisley then "laughed and said, I can still write you up; now you're covering up your name badge." Id. As the evening progressed, Chrisley became "more agitated." Id. 136. In order to avoid entering the rear area of the store where the employee restroom was located, Wheeler used the restroom at a neighboring business. Id.

The following day, Wheeler was responsible for opening the Bonsack store with Norma Fortney. Id. 103. Wheeler began crying as they entered the store, and she told Fortney what had happened while working with Chrisley. Id. Fortney called Stutts, who then contacted Patrick Campbell, the regional manager. Id. At Campbell's direction, Stutts asked Wheeler to prepare a written statement. In her statement, Wheeler described the incident that occurred in the back room of the Bonsack store in the summer of 2014, as well as her more recent interactions with Chrisley. Wheeler Handwritten Statement, Dkt. No. 120-21. Campbell subsequently directed Wheeler to speak with Faith Richardson and Crystal Stephenson from ABC's human resources department. Wheeler Dep. 86.

On April 25 and 26, 2016, Richardson and Stephenson traveled to Roanoke to conduct interviews as part of the investigation of Wheeler's complaint. They interviewed Wheeler, Chrisley, and eight other ABC employees. On August 18, 2016, Richardson and Stephenson issued a report summarizing the results of the investigation. Investigation Report, Singleton Decl. Ex. F, Dkt. No. 113-1.

In the investigation report, Richardson and Stephenson noted that Chrisley had admitted to giving Wheeler a massage in 2014. Id. 8. Because Chrisley was a "member of management," Richardson and Stephenson emphasized that Chrisley "should have known that it was not acceptable to give an employee a massage" and that he "exercised extremely poor judgment" in doing so. Id. With respect to the more recent allegations of sexual harassment, Richardson and Stephenson reported that Wheeler's claims "were not corroborated by any of the employees interviewed." Id. Richardson and Stephenson ultimately recommended that Chrisley undergo counseling, a policy review, and mandatory training, and that "every effort . . . be made to keep Ms. Wheeler and Mr. Chrisley from working together." Id. 9.

On November 14, 2016, Campbell issued Chrisley a written counseling memorandum for failing to follow the harassment policy. Chrisley Counseling Mem. 2, Dkt. No. 120-19. Chrisley subsequently attended a counseling session with Artrianna Morris, an adjunct faculty member at J. Sargeant Reynolds Community College. Chrisley testified during his deposition that the counseling session was "the closest thing [he] got to sexual harassment training," but that he did not "learn anything about sexual harassment in that meeting." Chrisley Dep. 42, Dkt. No. 120-11. In a report issued to Richardson and Campbell, Morris recommended that Chrisley "[s]eek professional counseling for his anger management issues" and "[u]nder no circumstances administer any more massages while at work." Morris Report 2, Dkt. No. 120-32.

At some point that is not clear from the record, Chrisley became the permanent assistant manager of an ABC store in Blacksburg, Virginia. Chrisley Dep. 28. In May of 2017, Chrisley "sexually harassed" a female employee at the Blacksburg store. Written Notice of Termination 1, Dkt. No. 113-1. Chrisley's employment was terminated on June 7, 2017. Id.

Wheeler filed the instant action against ABC and Chrisley on July 18, 2017, after exhausting her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). At that time, Wheeler was still employed by ABC. In December of 2017, ABC learned that Wheeler had been charged with shoplifting in November of 2014. Richardson Dep. 121, Dkt. No. 120-13. ABC obtained the information from an outside company that had been hired to conduct a background check on Ms. Wheeler. Id. 121– 23. Records from Roanoke City General District Court indicate that Wheeler entered a plea of guilty to the charged offense, that she received a jail sentence of 30 days with 26 days suspended, and that she was assessed a fine and court costs. Va. Uniform Summons, Dkt. No. 113-8; see also Roanoke City General District Court Online Case Information System, Case No. GC14029591-00, available at https://eapps.courts.state.va.us/gdcourts.

On January 14, 2018, ABC terminated Wheeler's employment. Chase Thurman, who had replaced Campbell as regional manager, articulated the following basis for the decision in a written counseling memorandum: "Ms. Wheeler performed an illegal act that involved theft so she could not continue employment with ABC. There is a risk of exposure to the Agency to continue to have her work in a position that requires cash handling." Wheeler Counseling Mem. 1, Singleton Decl. Ex. L, Dkt. No. 113-1; see also Wage Employee Handbook 7, Singleton Decl. Ex. J, Dkt. No. 113-1 ("Examples of behavior, which may result in removal, may include, but are not limited to . . . [c]riminal convictions for illegal conduct occurring on or off the job that clearly are related to job performance . . . ."). Since January 1, 2014, at least eight other

individuals have been terminated by ABC after being convicted of a felony or misdemeanor offense. Singleton Decl. ¶ 16.

## Procedural History

Wheeler filed an amended complaint on February 23, 2018. In Count I of the amended complaint, Wheeler claims that she was subjected to a sexually hostile work environment in violation of Title VII. In Count II, Wheeler asserts claims of assault and battery against Chrisley. In Count III, Wheeler claims that ABC terminated her employment in retaliation for engaging in activity protected by Title VII.

On October 23, 2018, ABC moved for summary judgment on Counts I and III. The court held a hearing on the motion on January 23, 2019. The motion has been fully briefed and is ripe for review.

## Standards of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant a motion for summary judgment, the court must "view[] the facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Woollard v. Gallagher, 712 F.3d 865, 873 (4th Cir. 2013). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Anderson, 477 U.S.at 248.

## Discussion

### I.     Hostile Work Environment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Since an employee's work environment is a term or condition of employment, Title VII provides a cause of action for hostile work environment. EEOC v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 73 (1986)). To make out such a claim, a female plaintiff must demonstrate that "the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc). In moving for summary judgment on this claim, ABC argues that Wheeler is unable to satisfy the third and fourth elements. For the reasons that follow, however, the court is unpersuaded.

To satisfy the third element, Wheeler must present sufficient evidence from which a reasonable jury could find that the offending conduct was so severe or pervasive as to alter the conditions of her employment and create an abusive or hostile atmosphere. "This element of a hostile work environment claim has both subjective and objective parts." Freeman v. Dal-Tile Corp., 750 F.3d 413, 421 (4th Cir. 2014) (internal quotation marks omitted). Wheeler "must show that [she] did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." Id. (alteration in original) (internal quotation marks omitted).

At this stage of the proceedings, ABC does not challenge the sufficiency of the evidence with respect to the subjective portion of this element and instead focuses on whether the harassment was objectively severe or pervasive. With respect to this component, the United States Court of Appeals for the Fourth Circuit has explained as follows:

> Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position. That determination is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

> whether it unreasonably interferes with the employee's work
> performance. It is not, and by its nature cannot be, a
> mathematically precise test.

Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); see also

Jennings v. Univ. of N.C., 482 F.3d 686, 696 (4th Cir. 2007) ("Whether gender-oriented

harassment amounts to actionable (severe or pervasive) discrimination depends on a

constellation of surrounding circumstances, expectations, and relationships. All the

circumstances are examined, including the positions and ages of the harasser and victim, [and]

whether the harassment was frequent, severe, humiliating, or physically threatening[.]") (internal

quotation marks omitted).

Although viable hostile work environment claims often involve repeated conduct, the

Fourth Circuit has recognized that isolated incidents of harassment, if sufficiently serious, can

amount to discriminatory changes in the terms and conditions of employment. Boyer-Liberto,

786 F.3d at 277; see also id. at 280 (holding that a reasonable jury could find that a particular

employee's "two uses of the 'porch monkey' epithet . . . were severe enough to engender a

[racially] hostile work environment"). The Court has also explained that "the status of the

harasser may be a significant factor" in measuring the severity of harassing conduct, since

harassment perpetrated by a manager or supervisor against a subordinate employee has a

"particularly threatening character." Id. (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742,

763 (1998)). Ultimately, "whether 'harassment was sufficiently severe or pervasive is

quintessentially a question of fact.'" Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 733 (4th Cir.

1997) (quoting Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir. 1985)). "Thus, while

summary judgment is appropriate in cases where the facts are clearly insufficient to satisfy the

standard, when there is a close question and 'reasonable minds could differ' when weighting all

the facts against the law, then summary judgment is inappropriate." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 208 (4th Cir. 2014) (quoting Paroline, 879 F.2d at 105).

Viewing the record in the light most favorable to Wheeler, the court concludes that a reasonable jury could find that Chrisley's behavior created an objectively hostile or abusive work environment. See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998) ("[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."). As recounted above, Chrisley engaged in unwanted physical contact on multiple occasions when he and Wheeler worked together. On the first occasion, Chrisley cornered Wheeler in a back room, directed her to sit on a desk, and proceeded to massage Wheeler's fingers, while moaning and breathing heavily. In light of Chrisley's managerial position and the fact that Wheeler had to physically push past him in order to exit the room, a reasonable jury could find that such conduct was not only sexual in nature, but physically threatening or demeaning. The same is true for the subsequent occasions on which Chrisley cornered Wheeler in the store and made unwanted sexual advances toward her.

In addition to engaging in unwanted physical contact, Chrisley made comments about Wheeler's attractiveness, both to Wheeler and to customers who entered the Bonsack store. Chrisley also voiced his opinions as to the best sex positions, referenced sexually explicit literature, and licked his lips when Wheeler walked near him. Additionally, Chrisley expressed pleasure in allegedly being able to see Wheeler's cleavage, and advised her that he could "write [her] up" but would not since he enjoyed viewing the area between her breasts. Wheeler Dep. 133.

In light of the sexual nature of Chrisley's comments to Wheeler, the instances of unwelcome physical touching, and the fact that such conduct occurred while Chrisley was

serving in a managerial capacity, the court concludes that Wheeler has raised a triable issue as to whether the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive or hostile atmosphere. In arguing to the contrary, ABC attempts to distinguish Wheeler's work environment from previous cases in which the Fourth Circuit has held that particular conduct was sufficiently severe or pervasive to make out a sexual harassment claim. See ABC's Br. Supp. Mot. Summ. J. 16 ("The facts in this case are . . . in stark contrast to those in Okoli, Stewart, and Beardsley.") (citing Okoli v. City of Baltimore, 648 F.3d 216 (4th Cir. 2011); Stewart v. MTF Gaming Grp., Inc., 581 F. App'x 245 (4th Cir. 2014); Beardsley v. Webb, 30 F.3d 524 (4th Cir. 1994)). However, both the Supreme Court and the Fourth Circuit have made clear that "appalling conduct" alleged in previous cases "do[es] not mark the boundary of what is actionable." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993); see also Walker, 775 F.3d at 209 ("[W]hile our case law has noted instances where certain conduct would satisfy a plaintiff's burden on the 'severe or pervasive' element, we have not limited the applicable analysis only to instances where those precise behaviors are alleged to have occurred."). Although this case may be different from Okoli, Stewart, and Beardsley in some respects, the record does not permit the court to rule, as a matter of law, that the circumstances of Wheeler's employment were insufficient to constitute a hostile work environment. Instead, the court believes that a jury armed with "[c]ommon sense, and an appropriate sensitivity to social context," could reasonably conclude that Wheeler was subjected to behavior so objectively offensive as to alter the conditions of her employment. Oncale, 523 U.S. at 82. Accordingly, summary judgment on the third element is inappropriate.[3]

---

[3] In reaching this decision, the court does not suggest that a jury should be limited to assessing whether Chrisley's behavior toward Wheeler created a hostile work environment. A jury would also be entitled to consider other evidence potentially indicative of severe or pervasive harassment, including harassment directed towards other women. See Ziskie v. Mineta, 547 F.3d 220, 225 (4th Cir. 2008) (emphasizing that "evidence about how other employees were treated in that same workplace can be probative of whether the environment was indeed a sexually hostile one, even if the plaintiff did not witness the conduct herself"); see also Sandoval v. Am. Bldg. Maint. Indus.,

With respect to the fourth element of Wheeler's hostile work environment claim, Wheeler must establish a basis for imposing liability on ABC. When a plaintiff's claim is based on the conduct of a co-worker, the employer is liable "only if it was negligent in controlling working conditions." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). When a plaintiff's claim is based on the conduct of a supervisor, the employer is strictly liable if the harassment culminated in a tangible employment action. Id. "But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." Id. (citing Faragher v. City Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)).

Under this framework, "it is obviously important whether an alleged harasser is a 'supervisor' or merely a co-worker." Id. at 430. In Vance, the Supreme Court held that a harasser qualifies as a supervisor, for purposes of the employer's vicarious liability, if "the employer has empowered that employee to take tangible employment actions against the victim." Id. at 431. An employee is so empowered when he is able "to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Ellerth, 524 U.S. at 761). The Court rejected a more "nebulous" definition that

---

Inc., 578 F.3d 787, 802 (8th Cir. 2009) ("When judging the severity and pervasiveness of workplace sexual harassment, this court has long held harassment directed towards other female employees is relevant and must be considered."). However, for purposes of summary judgment, the court concludes that Wheeler's evidence regarding her own interactions with Chrisley is sufficient to create a triable issue of fact as to the third element. Accordingly, at this stage of the proceedings, the court finds it unnecessary to address ABC's objections to testimony describing incidents of sexual harassment or misconduct that Wheeler and her co-workers heard about from other employees. The defendants are free to renew such objections in a motion in limine or at trial.

would provide supervisory status to employees who merely have the ability to exercise discretion over another's daily work. Id. The Court also made clear, however, that an employee need not have the final say as to a tangible employment action in order to be considered a supervisor. Instead, "the employee's decision may be 'subject to approval by higher management.'" Boyer-Liberto, 786 F.3d at 278 (quoting Vance, 570 U.S. at 437 n.8).

In this case, the parties dispute whether Chrisley was Wheeler's supervisor for purposes of vicarious liability. Based on the evidence presented, including Chrisley's "Employee Work Profile," Dkt. No. 120-20, the court believes that this presents a somewhat close question. However, even if the court were to conclude that Chrisley was not Wheeler's supervisor under Vance, ABC is not entitled to summary judgment.

As indicated above, if the harasser is a co-worker, "the employee must show that the employer was 'negligent in controlling working conditions'—that is, the employer 'knew or should have known about the harassment and failed to take effective action to stop it." Strothers v. City of Laurel, 895 F.3d 317, 333 (4th Cir. 2018) (quoting Vance, 570 U.S. at 424; Ocheltree, 335 F.3d at 333–34). The Fourth Circuit has explained that once an employer has actual or constructive notice of the harassing conduct, "it must respond with remedial action 'reasonably calculated to end the harassment.'" EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008) (quoting Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)). "While the adoption of an effective anti-harassment policy is an important factor in determining whether [an employer] exercised reasonable care, the policy must be effective in order to have meaningful value." Id.

Applying these standards, the court concludes that a reasonable jury could find that ABC had notice of the sexual harassment inflicted by Chrisley. The record reveals that Wheeler reported each incident to Jennifer Stutts, the manager of the Bonsack store, as provided in

ABC's harassment policy. See Harassment Policy 1 ("An employee may choose to report allegations of workplace harassment to any agency, manager, supervisor or Division Director that they feel comfortable reporting to.") (emphasis added). In moving for summary judgment, ABC emphasizes that it is "undisputed that Wheeler did not report the 2014 incident to ABC Human Resources or Patrick Campbell." Br. Supp. M. Summ. J. 20. While this may be true, Wheeler was not required to do so under the harassment policy. Instead, Stutts and any other manager or supervisor to whom Wheeler complained had a "duty to report" Wheeler's allegations. Harassment Policy 1. The fact that they failed to do so, in violation of the policy, does not render ABC immune from liability at this stage of the proceedings. See Ocheltree, 335 F.3d at 334 ("An employer cannot avoid Title VII liability for coworker harassment by adopting a 'see no evil, hear no evil' strategy. Knowledge of harassment can be imputed to an employer if a 'reasonable [person], intent on complying with Title VII,' would have known about the harassment.") (citation omitted).

The court likewise concludes that a reasonable jury could find that ABC did not respond with reasonable corrective action. It is undisputed that Chrisley was not disciplined in 2014, following the allegations of unwanted physical contact and sexual advances. Instead, Stutts undertook efforts to prevent Wheeler and Chrisley from working together. While this enabled Wheeler to avoid having contact with Chrisley for nearly two years, it did not correct the offending behavior or prevent it from recurring. Instead, according to the evidence presented by Wheeler, Chrisley had inappropriate interactions with other women while on duty, and he immediately engaged in sexually offensive conduct when he and Wheeler worked together again in 2016. Although the harassment policy has been described as having "zero tolerance" for sexual harassment, Chrisley was merely counseled in 2016 after it was determined that he violated the policy. Campbell Dep. 37, Dkt. No. 120-2; Richardson Dep. 40, Dkt. No. 120-13.

It was not until May of 2017, after he sexually harassed a subordinate employee at the store in Blacksburg, that ABC terminated Chrisley's employment. Viewing the evidence in the light most favorable to Wheeler, the court is unable to conclude that ABC's response was "sufficient on these facts to warrant summary judgment." Sunbelt Rentals, 521 F.3d at 320. Instead, the court believes that a rational jury could find that ABC failed to respond with remedial action reasonably calculated to end the harassment. Id.

In sum, the court concludes that a rational jury could find that Wheeler was subjected to an objectively hostile work environment, and that ABC had knowledge of the harassment and failed to respond in a reasonable fashion. Accordingly, even assuming that Chrisley was not Wheeler's supervisor for purposes of vicarious liability, ABC is not entitled to summary judgment on the hostile work environment claim.

## II. Retaliation

Wheeler also asserts a claim of retaliation in violation of Title VII. In addition to prohibiting discrimination on the basis of a protected trait, Title VII makes it unlawful for an employer to retaliate against an employee "because [the employee] has opposed any practice made an unlawful practice by this subchapter," or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In this case, Wheeler claims that ABC terminated her employment because she complained about Chrisley's behavior, filed a charge of discrimination with the EEOC, and commenced the instant action under Title VII.

When there is no direct evidence of retaliation, a plaintiff may proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). This framework requires the plaintiff to initially establish, by a preponderance of the evidence: (1) that she engaged in protected activity;

(2) that her employer took a materially adverse action against her; and (3) that a causal connection existed between the protected activity and the materially adverse action. EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015) (quoting Hill, 354 F.3d at 285).

In this case, even assuming that Wheeler could establish a prima facie case of retaliation, ABC has articulated a legitimate, nonretaliatory reason for terminating her employment, namely the fact that she was convicted of shoplifting after being hired to work as a part-time sales associate. Because ABC has clearly met its burden of proffering a permissible reason for its termination decision, Wheeler must show that the asserted reason is pretext for retaliation. While Wheeler advances several arguments in an attempt to establish pretext, the court concludes that she has failed to create a genuine issue of material fact with respect to this issue.

Wheeler first argues that she "did not steal anything," that she has no recollection of pleading guilty to the charged offense, and that ABC should have given her an opportunity to respond before terminating her employment. Pl.'s Br. in Opp'n 33–34, Dkt. No. 33; see also Wheeler Dep. 156 ("It's my understanding that I pled no contest."). These arguments are clearly insufficient to satisfy the plaintiff's burden. The Fourth Circuit has "repeatedly observed that it is not a court's province to decide whether an employer's reason for terminating an employee was wise, fair, or even correct, ultimately so long as it truly was the reason for the employee's

termination." Walker, 775 F.3d at 211 (internal quotation marks and alterations omitted). Thus, even if Wheeler could establish that records from the General District Court for the City of Roanoke are incorrect, such a showing is not sufficient to demonstrate pretext. Nor is Wheeler's assertion that ABC's investigation was inadequate. See, e.g., Cupples v. AmSan, LLC, 282 F. App'x 205, 210 (4th Cir. 2008) ("[Plaintiff] makes much of his criticism that AmSan's investigation into his misconduct was either inadequate or overly aggressive. But focusing on the quality of internal investigations misses the point. A federal court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'") (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

Wheeler also contends that "Chrisley was by all accounts a terrible employee" and that a jury could find pretext based on the fact that he was not reprimanded for engaging in various forms of misconduct. Pl.'s Br. Opp'n Summ. J. 34–35. This argument is also unpersuasive. "To be sure, evidence that an employer treated similarly situated individuals differently can be evidence of pretext." Walker, 775 F.3d at 211. However, a plaintiff must show that she and an alleged comparator were "similarly situated . . . in all relevant respects—a rigorous standard at the pretext stage." Torgerson v. City of Rochester, 643 F.3d 1031, 1051 (8th Cir. 2011) (internal quotation marks omitted); see also Odom v. Int'l Paper Co., 652 F. Supp. 2d 671, 692 (E.D. Va. 2009) (same). While Wheeler's brief clearly paints Chrisley in a negative light, she does not cite to any evidence indicating that Chrisley was ever charged with or convicted of a crime. Moreover, the record reveals that at least eight other individuals have been terminated by ABC after being convicted of a felony or misdemeanor offense. Thus, Wheeler's reliance on the treatment of other employees does not demonstrate pretext. "To the contrary, the record on this

point supports [ABC's] legitimate, nonretaliatory reason for its decision." Walker, 775 F.3d at 212.

     ·    Finally, the court has no reason to doubt that Wheeler was "a great ABC employee." Pl.'s Br. Opp'n Summ. J. 36. Under existing precedent, however, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Technologies Applications & Serv. Co., 80 F.3d 964, 960–61 (4th Cir. 1996). "Similarly, that plaintiff's coworkers may have thought that she did a good job, or that she did not deserve to be discharged, is close to irrelevant" and does not give rise to a triable inference of pretext. DeJarnette, 133 F.3d at 299 (internal quotations and alterations omitted).

     For these reasons, the court concludes that the record is devoid of sufficient evidence from which a reasonable jury could find that Wheeler was terminated because she engaged in activity protected by Title VII. Accordingly, ABC is entitled to summary judgment on the retaliation claim asserted in Count III.

### Conclusion

     For the reasons stated, ABC's motion for summary judgment will be granted in part and denied in part. The case will proceed to trial on Wheeler's hostile work environment claim against ABC and her claims of assault and battery against Chrisley.

     The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

     DATED: This 20th day of February, 2019.

 

Senior United States District Judge